Daniel A. Pollack
Martin I. Kaminsky
Edward T. McDermott
POLLACK & KAMINSKY
114 West 47th Street
New York, NY 10036
(212) 575-4700
Attorneys for Plaintiffs



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

J. & W. SELIGMAN & CO. INCORPORATED,
et ano,

              Plaintiffs,

        v.

ELIOT SPITZER, ATTORNEY GENERAL
OF THE STATE OF NEW YORK,

              Defendant.

No. 05 Civ. 7781

**COMPLAINT**

Plaintiffs J. & W. Seligman & Co. Incorporated ("Seligman") and Brian T. Zino allege:

### SUMMARY OF THE ACTION

1.    This is an action to enjoin a state attorney general from involving himself in a matter reserved by Congress to the Securities and Exchange Commission under the Investment Company Act of 1940.

2.    Section 36(b) of the Investment Company Act of 1940 provides, in pertinent part:

> For purposes of this subsection, the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection **by the Commission**

> [i.e. the SEC], or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person ... for breach of fiduciary duty in respect of such compensation ...

Despite this clear federal law entrusting regulatory oversight of this subject matter to the SEC, Defendant, a state official, has commenced inquiries into the "compensation for services" (i.e. the advisory fees) of Seligman. Defendant has done so by way of subpoenas and by threats to bring enforcement proceedings against Seligman for allegedly "excessive" advisory fees.

3. Since the enactment of § 36(b) of the Investment Company Act by Congress in 1970, to the best of Plaintiffs' knowledge and belief, not one single case has ever been brought on the subject of advisory fees by any state attorney general. Such cases are the province of investors in the Funds or the SEC, the sole regulator of this narrow and highly specific subject. To allow Defendant to involve himself in or bring an action on this subject matter would open the door to 50 different state attorneys general doing the same thing, thus defeating the carefully conceived and comprehensive federal regulatory scheme enacted by Congress in § 36(b) of the Investment Company Act.

4. This action presents a purely legal issue regarding the primacy and exclusive role of the SEC as the regulator charged by Congress with regulatory oversight of investment company advisory fees. Plaintiffs do not challenge the authority of the Defendant over other areas of investigation, only over advisory fees. Indeed, Plaintiffs have complied with, and will continue to comply with, subpoenas on subject matter within the proper investigatory province of Defendant. Plaintiffs are respectful of Defendant and the work he has done in the public interest, but believe that, in this instance, he has exceeded his authority and intruded himself into an area assigned by Congress to the SEC.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, i.e. the Investment Company Act of 1940, 15 U.S.C. § 80a-1 et seq.

6.  Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district. In particular, the Defendant's subpoenas requesting documents on this subject originated from the Defendant's executive office in New York, New York.

## THE PARTIES

7.  Plaintiff J. & W. Seligman & Co. Incorporated is an investment adviser registered with the SEC pursuant to the Investment Advisers Act of 1940, organized under Delaware law (not New York law), with its main office at 100 Park Avenue, New York, New York. Seligman is one of the oldest continuous money managers in the United States, having had its origins in the year 1864. Seligman manages mutual funds, closed-end funds, private investment funds, institutional accounts and individual accounts. Plaintiff Brian T. Zino is the President of J. & W. Seligman & Co. Incorporated, is a citizen of the State of New Jersey and is a recipient of a subpoena from the Defendant.

8.  Defendant Eliot Spitzer is sued in his official capacity as Attorney General for the State of New York. He maintains executive offices at The Capitol, Albany, New York and at 120 Broadway, New York, New York, the office that has been principally involved in the events or occurrences forming the subject matter of this action.

## THE FACTS AND THE VIOLATION

### The Original Investigation

9. In February 2004, the Defendant, acting together with the SEC, commenced an investigation of Seligman, stimulated by a voluntary public disclosure by Seligman that, in 2002, it had entered into a short-lived arrangement with a Chicago-based brokerage firm to permit a limited amount of frequent trading in certain of the mutual funds managed by Seligman. The arrangement was terminated by Seligman in 2003. Seligman, as noted, voluntarily made public disclosure of the arrangement, initiated settlement discussions with the independent directors of the Seligman Funds and, as a result thereof, made restitution to the four Funds affected by, or which may have been affected by the arrangement.

10. Notwithstanding this self-reporting and voluntary recompense — unique in the mutual fund industry — the investigation continued for well over a year. Seligman cooperatively produced documents and witnesses to testify on all aspects of the investigation.

11. In March 2005, negotiations to settle the matter were initiated by Defendant and the SEC. After several months of negotiations, in mid-August 2005 tentative agreement was reached, both with Defendant and the SEC, on the financial terms of a settlement. However, Defendant then sought to impose operating conditions on Seligman which were unacceptable to Seligman and which were not requested or required by the SEC. The SEC had already issued its new, comprehensive corporate governance rules for investment companies, with which Seligman was in full compliance. The Defendant's conditions would have effectively involved turning control of the negotiation of advisory fees over to an outsider, and subjecting the advisory fee negotiation process at Seligman to oversight and control by Defendant in perpetuity. These conditions, and others sought by Defendant, are inconsistent with the carefully calibrated

4

statutory scheme for setting advisory fees enacted by Congress in the Investment Company Act. See e.g. §§ 10, 15 and 36(b).

12. During the week of August 22, 2005, Seligman candidly advised Defendant that, although it would reluctantly meet the monetary demands of Defendant, it could not live with the other conditions Defendant sought to impose.

13. Defendant then threatened that, if Seligman did not accept its required conditions, Defendant would expand its investigation from frequent trading to what it termed "excessive" advisory fees. Defendant also threatened to subpoena the independent directors and pursue actions against individuals — unnamed — at Seligman. Seligman pointed out to Defendant that, in its view, Defendant had no authority to involve himself in the subject matter of allegedly "excessive" advisory fees, since, under the statute, that is the regulatory province of the SEC, and only the SEC. Seligman also pointed out to Defendant that, in the several months of negotiations, the SEC staff had repeatedly said that they were not seeking a reduction in the advisory fee rates of Seligman. Defendant, however, was not to be deterred.

**The Offending Subpoenas**

14. On Friday, August 26, 2005, Defendant issued a bevy of subpoenas to the independent directors of the Seligman Funds, to the Funds themselves, to the principal shareholder of Seligman and to the President of Seligman. These subpoenas were, it would seem, a pressure tactic by Defendant to compel Seligman to yield to Defendant's unacceptable conditions of settlement. The subpoenas, in addition to seeking extensive materials already provided on the subject of the investigation, i.e. frequent trading, now changed the entire thrust of the investigation, and sought seven years' worth of documents directed to the advisory fee negotiations between Seligman and the independent directors of the Seligman Funds, a subject

5

reserved by Congress to the SEC. (We note, in passing, that the seven-year demand conflicts squarely with the one-year limitation enacted by Congress on damages for excessive advisory fees. See § 36(b)(4) of the Investment Company Act). A copy of the pertinent portion of the subpoenas, items 10-12, is annexed hereto as Exhibit A.

15.   Seligman commits considerable resources to ensuring its compliance with applicable federal laws and regulations, including particularly the Investment Company Act of 1940. Seligman undergoes continuous regulation, supervision, examination, and monitoring by the SEC, and is subject to the SEC's enforcement jurisdiction with respect to this very subject matter, i.e. advisory fees. By seeking books, records and documents relating to this subject matter and otherwise seeking to exercise power over Seligman in this area, the Defendant threatens to do violence to the regulatory scheme created by Congress, and further threatens to drastically increase — and if not enjoined will drastically increase — the compliance burden faced by Seligman in a manner contrary to federal law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs J. & W. Seligman & Co. Incorporated and Brian T. Zino demand judgment against Defendant Eliot Spitzer, in his official capacity as Attorney General of the State of New York:

A.   Enjoining the Defendant, his agents, and all persons acting in concert with them from (1) investigating, requesting or issuing subpoenas for information concerning allegedly "excessive" advisory fees paid to Seligman, and (2) enforcing or otherwise pursuing production of items 10-12 of Exhibit A, and (3) using any such information in any enforcement proceeding against Seligman or any person associated with Seligman, and (4) otherwise exercising powers delegated by Congress to the SEC under § 36(b) of the Investment Company Act of 1940.

B.   Granting Plaintiffs such other and further relief, including costs, as this Court may deem just and proper.

Dated: New York, New York
       September 2, 2005

                        POLLACK & KAMINSKY

                        By: /s/ Daniel A. Pollack
                        Daniel A. Pollack (9207)
                        Martin I. Kaminsky (3033)
                        Edward T. McDermott (7243)
                        114 West 47th Street, Suite 1900
                        New York, New York 10036
                        Tel. (212) 575-4700
                        Fax (212) 575-6560

                        *Attorneys for Plaintiffs*

**EXHIBIT A**

## SUBPOENA
## THE PEOPLE OF THE STATE OF NEW YORK

### GREETING

**TO:** **BRIAN T. ZINO**
c/o Daniel A. Pollack, Esq., Pollack & Kaminsky
114 West 47th Street, New York, New York 10036
Telephone: 212-575-4700; Facsimile: 212-575-6560

**WE HEREBY COMMAND YOU**, pursuant to General Business Law § 352 and Executive Law § 63(12), that, all business and excuses being laid aside, you deliver and turn over to the Attorney General of the State of New York, or a designated Assistant Attorney General, on the 12th day of September, 2005, at 10:00 a.m. or any agreed upon adjourned date or time, at 120 Broadway, 23rd Floor, Room 23A48, New York, New York 10271, all documents and information requested in the attached Schedules in accordance with the instructions and definitions contained therein.

**PLEASE TAKE NOTICE** that the Attorney General deems the documents and information requested by this Subpoena to be relevant and material to an investigation and inquiry undertaken in the public interest.

**PLEASE TAKE FURTHER NOTICE** that your failure to deliver the documents and information requested in the attached Schedules on the date, time and place stated above or on any agreed upon adjourned date or time, may subject you to prosecution for a misdemeanor or civil remedies pursuant to General Business Law § 352(4) and/or other statutes.

**WITNESS, Honorable Eliot Spitzer**, Attorney General of the State of New York, this 29th day of August, Two Thousand Five.

R. VERLE JOHNSON
Assistant Attorney General
New York State Attorney General's Office
120 Broadway, 23rd Floor
New York, New York 10271
Telephone: (212) 416-8207

10. For the period January 1, 1998, to December 31, 2004, all documents relating to any information obtained by the Board pursuant to the requirements of Section 15 (c) of the Investment Company Act of 1940 (the "1940 Act") (15 USC § 80a-15(c)), or otherwise, for the purpose of evaluating the terms of the management agreement between JWS and each of the Seligman Funds (the "Management Agreement"), the continuance of which was approved at any meeting of the Board held during the period January 1, 1998, to December 31, 2004.

11. For the period January 1, 1998, to December 31, 2004, all documents concerning the Board's evaluation of the information referred to in Schedule B.10, above, and the Board's determination to continue the Management Agreement, including but not limited to documents concerning the following factors listed in the Statements of Additional Information for the Seligman Funds:
   a. comparative performance information versus other similar investment companies and certain indices;
   b. the nature and quality of investment services and administrative services rendered by JWS;
   c. payments received by JWS from all sources involving both the Seligman Fund and all other Seligman investment companies;
   d. the costs borne by, and profitability of, JWS and its affiliates in providing services of all types to the Seligman Fund and to all other Seligman investment companies;
   e. comparative fee an expense data versus other similar investment companies;
   f. JWS's policies and practices regarding allocation of portfolio transactions and soft dollars;
   g. portfolio turnover of the Seligman Fund compared to other similar investment companies;
   h. JWS's willingness to consider and, when desirable, implement organizational and operational changes designed to improve investment results; and
   i. fall-out benefits which JWS and its affiliates receive from managing the Seligman Fund.

12. All documents relating to any discussion at any meeting of the Board during the period January 1, 1998, to December 31, 2004, on whether or not to continue the Management Agreement, including but not limited to minutes of the meeting, drafts of minutes, notes taken by any person attending the meeting, and any other documents showing that the Board and each of the directors on the Board determined (as stated in the Statements of Additional Information for the Seligman Funds) that the "overall arrangements between the Fund and [JWS], as reflected under the Management Agreement, were fair and reasonable . . . ."