```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

J. & W. Seligman & Co.              :
Incorporated, et ano,
                                    :
              Plaintiffs,               05 Civ. 7781 (KMW)
                                    :
      -against-                         OPINION &
                                    :   ORDER
Eliot Spitzer, Attorney General
of the State of New York.,          :

              Defendant.            :

-----------------------------------X
```

WOOD, U.S.D.J.:

Plaintiffs J. & W. Seligman & Co. Incorporated ("Seligman") and its president, Brian T. Zino (together, "Plaintiffs") bring this action to enjoin Defendant Eliot Spitzer, New York State Attorney General (the "Attorney General") from investigating the advisory fees Seligman charges for its financial services. In particular, Plaintiffs seek to enjoin enforcement of portions of certain subpoenas, issued by the Attorney General in the course of a fraud investigation, that seek information regarding Seligman's advisory fees and the process for arriving at them. Plaintiffs argue that the Attorney General's actions are preempted by federal law, namely section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a ("ICA").

The Attorney General now moves to dismiss this action on the grounds that (1) this Court should abstain from considering the merits pursuant to the Supreme Court's decision in Younger v.

Harris et al., 401 U.S. 37 (1971); and (2) in any event, Plaintiffs' preemption argument is without merit and should be dismissed for failure to state a claim.  For the reasons that follow, the Court holds that abstention is appropriate and that the case should be dismissed without consideration of Plaintiffs' preemption argument.  The Attorney General's motion to dismiss is therefore GRANTED.

I. Factual Background

A. The Parties

Seligman is an investment adviser registered with the Securities and Exchange Commission ("SEC") pursuant to the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1 et seq..  It manages several types of funds and accounts, including mutual funds ("Seligman Funds").  Brian T. Zino is the President of Seligman.

The Attorney General is the state official authorized by the Martin Act, New York's "blue sky" law, to investigate and prosecute securities fraud.  N.Y. Gen. Bus. Law § 352.  The Martin Act provides, in pertinent part, that "[w]henever it shall appear to the attorney-general" that securities fraud has occurred, is ongoing, or is about to occur, the attorney general

> may in his discretion either require or permit
> . . . [the alleged violator]  to file with him
> a statement in writing under oath or otherwise
> as to all the facts and circumstances
> concerning the subject matter which he
> believes it is [in] the public interest to
> investigate . . . and may also require such
> other data and information as he may deem

> relevant and may make such special and independent investigations as he may deem necessary in connection with the matter.

N.Y. Gen. Bus. Law § 352(1).  Subsection (2) provides the Attorney General with subpoena power in furtherance of an investigation.

> The attorney-general, his deputy or other officer designated by him is empowered to subpoena witnesses, compel their attendance, examine them under oath before him or a magistrate, a court of record or a judge or justice thereof and require the production of any books or papers which he deems relevant or material to the inquiry. . . .

Id. at § 352(2).

    B. <u>Commencement of the Martin Act Investigation</u>

On January 30, 2004, the Attorney General commenced a Martin Act investigation into possible fraudulent conduct by Seligman and related entities and persons.  The SEC was conducting, at that time, an investigation into the same conduct.  According to the Attorney General, his investigation inquires into at least three possible frauds under the Martin Act:

> one relating to a misrepresented market timing policy, allowing purportedly prohibited activities that appear to have cost Fund shareholders over $80 million since 1998; a second arising out of a misleading press release creating the false impression that restitution payments made by Seligman to the Funds fully compensated shareholders for the harm they suffered; and a third examining whether Seligman or others engaged in fraudulent conduct relating to Seligman's advisory fees.

(AG's Mem. at 4.)  Plaintiffs do not contest the Attorney General's

3

power to investigate the first two of the possible frauds described above.

On January 30, 2004, the Attorney General issued subpoenas relating to the market timing aspects of the investigation. (Johnson Aff. ¶ 4.)  On or about June 14, 2005, the Attorney General issued additional subpoenas, parts of which inquired into the subject of advisory fees. (Johnson Aff. ¶ 5.)  Apparently, neither Seligman nor its officers or directors contested these subpoenas.

In March 2005, Seligman, the Attorney General, and representatives of the SEC began settlement discussions. (See Compl. ¶ 11.)  In mid-August, a tentative agreement was reached on the financial terms of the settlement. (Id.)  The Attorney General also sought to impose certain operating restrictions on Seligman, regarding the manner in which Seligman's advisory fees would be negotiated and established in the future.  These restrictions were not required or requested by the SEC. (Id.; Opp. at 2-3.)

During the week of August 22, 2005, Seligman advised the Attorney General that it would accept the financial terms of the settlement, but could not accept the other conditions. (Compl. ¶ 12.)  Plaintiffs allege that at this point, the Attorney General "threatened" that unless Seligman accepted the additional conditions, he would "expand" his investigation into "excessive" advisory fees.  (Id. at ¶ 13.)  Seligman refused to accept the

additional condition, and asserted that the Attorney General had no authority to investigate "excessive" advisory fees, because that power was exclusively within the province of the SEC.

### C. The Contested Subpoenas

On August 26, 2005, the Attorney General issued subpoenas to nine of the twenty-three Seligman investment companies, to eight current independent directors of the Seligman Funds, to one former independent director of the Seligman Funds, and, on August 29, 2005, to the two current interested "inside" directors (Brian T. Zino and William C. Morris).  (See Johnson Aff. ¶ 6.)  The subpoenas contained sections requesting information relating to advisory fees. (the "contested subpoenas")  (See id.)  Plaintiffs object to the following portions of the subpoenas: paragraph 10, which requests documents relating to "any information obtained" by the Board for the purposes of evaluating the terms of the management agreement between Seligman and the Seligman Funds; paragraph 11, which requests documents concerning the "Board's evaluation" of the above documents; and paragraph 12, which requests all documents relating to any discussion at any meeting of the Board on "whether to continue the Management Agreement."  (See Opp. at 3-4; Johnson Aff. Ex. B (Zino Subpoena) at 4-5.)  Paragraphs 10, 11, and 12 request information for the period of January 1, 1998 through December 21, 2004.  The contested subpoenas were returnable on September 12, 2005, to the Office of the

5

Attorney General.

According to the Attorney General, each of the aforementioned persons or entities served with a subpoena, other than Zino and Morris, was either unable to locate responsive documents or produced responsive documents, including some in relation to advisory fees. (Johnson Aff. ¶ 7.) Zino and Morris produced documents responsive to all paragraphs except paragraphs 10, 11 and 12, and referenced the pendency of this suit in relation to those paragraphs. (Id.)

On September 6, 2005, Plaintiffs filed this federal action; service was effectuated on the Attorney General's office on September 12, 2005, the return date of the contested subpoenas. On September 28, 2005, the Attorney General filed an application in New York State Supreme Court, pursuant to Section 354 of the New York General Business Law, for an order to obtain from several Seligman entities and officers testimony and documents relating to the Attorney General's market timing investigation. The Attorney General's application did not ask for information relating to advisory fees "[o]ut of respect for the jurisdiction of this court."[1] (Johnson Aff. ¶ 10.) Justice Phyllis Gangel-Jacob signed an order granting the application the same day. The Attorney

---

[1] The Attorney General specifically noted as much in his application to the Supreme Court. (See Johnson Aff. Ex. C (Aff. in Supp. of an Order Pursuant to Gen. Bus. Law Section 354) at 41 n. 4.)

General filed the present motion to dismiss shortly thereafter.

## II. Discussion

The threshold issue before this Court is whether it should dismiss Plaintiffs' action pursuant to the Younger abstention doctrine.  See Younger v. Harris et al., 401 U.S. 37 (1971). Younger and its progeny require federal courts to abstain from enjoining pending state judicial proceedings, in order to "allow state courts to resolve pending matters within their jurisdiction." Washington v. County of Rockland, 373 F.3d 310, 318 (2d Cir. 2004); see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982) ("Younger v. Harris and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances.").  Younger abstention "is fueled by the notion that courts of equity should not intervene where a party has an adequate remedy at law, and by concerns of comity and federalism expressed in 'the  belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" Cecos Int'l, Inc. v. Jorling, 895 F.2d 66, 70 (2d Cir. 1990) (quoting Younger, 401 U.S. at 44).  Where the Younger requirements are met, the appropriate remedy is dismissal of the federal case.  Gibson v. Berryhill, 411 U.S. 564, 577 (1973).

Although Younger involved a constitutional challenge to a

pending state criminal proceeding, "Younger abstention also has been extended beyond the ambit of state criminal prosecutions to state civil proceedings and administrative proceedings." Washington, 373 F.3d at 318. Subject to limited exceptions discussed in Section C, Younger abstention is mandatory when: (1) "there is an ongoing state proceeding"; (2) "an important state interest is involved"; and (3) "the federal plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding." (the "three-part test")[2] Christ the King Regional High School v. Culvert, 815 F.2d 219, 224 (2d Cir. 1987).

The Attorney General argues that Plaintiffs' action meets the three-part test for Younger abstention because (1) exercising federal jurisdiction would interfere with an ongoing Martin Act proceeding against Plaintiffs; (2) the ongoing proceeding involves an important state interest in investigating and preventing fraud; and (3) New York law provides Plaintiffs with an adequate opportunity to challenge the contested subpoenas and the Attorney General's investigation in state court. Plaintiffs respond that

---

[2] Although the third prong discusses constitutional challenges to state proceedings, Younger abstention is also applicable to statutory challenges. See, e.g., Terminex International Company L.P. v. Rocque, 210 F. Supp. 2d 97 (D. Conn. 2002) (applying Younger abstention to a claim pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act); Louis v. Perales, No. 91 Civ. 4038, 1991 WL 167978 (S.D.N.Y. Aug. 20, 1991) (applying Younger abstention to a claim pursuant to the Medicaid Act).

8

Younger abstention is inappropriate for three reasons: (1) abstention is not appropriate in cases alleging federal preemption of a state action; (2) the Martin Act proceeding fails each prong of the three-part test; and (3) the Attorney General's investigation falls under both the "bad faith" and "extraordinary circumstances" exceptions to Younger.

A. Applicability of Younger to Preemption Actions

As a preliminary matter, this Court considers Plaintiffs' argument that the Younger doctrine is inapplicable because Plaintiffs are challenging a state action based on a claim of federal preemption.

In New Orleans Public Service, Inc. v. Council of the City of New Orleans ("NOPSI"), the Supreme Court held that courts should apply Younger abstention principles even when a case presents a "substantial claim" that a state action is preempted by federal law. 491 U.S. 350, 365 (1989).[3] However, NOPSI did not resolve whether a "facially conclusive" preemption claim would render abstention inappropriate, id. at 367, and several courts of appeals subsequently held that federal courts should not abstain when a

---

[3] The Court reasoned that preemption claims and constitutional claims should generally be treated identically because there "is no greater federal interest in enforcing the supremacy of federal statutes than in enforcing the supremacy of explicit constitutional guarantees, and constitutional challenges to state action, no less than pre-emption-based challenges, call into question the legitimacy of the State's interest in its proceedings reviewing or enforcing that action." NOPSI, 491 U.S. at 365.

9

preemption claim is "facially conclusive" or "readily apparent." See, e.g., Woodfeathers, Inc. v. Washington County, Or., 180 F.3d 1017, 1021-22 (9th Cir. 1999) (applying "readily apparent" test); GTE Mobilnet of Ohio v. Johnson, 111 F.3d 469, 475 (6th Cir. 1997) (applying "facially conclusive" test).

However, even assuming that the Second Circuit would adopt the "facially conclusive" exception to Younger abstention,[4] this exception does not help Plaintiffs because they cannot show that the issuance of subpoenas relating to advisory fees is "flagrantly and patently" violative of the ICA. See NOPSI at 367. Without reaching the merits of Plaintiffs' argument, it is clear that Plaintiffs' preemption claim is far from conclusive. For example, the National Securities Markets Improvement Act ("NSMIA"), passed in 1996 to amend the ICA, arguably preserves the Attorney General's

---

[4] Although the Second Circuit has not spoken on this issue, it is likely that it would adopt the exception. A District of Connecticut court has persuasively argued that pre-NOPSI Second Circuit case law suggesting that abstention "is not properly invoked in a preemption case," Stone & Webster Eng'g Corp. v. Ilsley, 690 F.2d 323, 326 n.2 (2d Cir. 1982), is today best understood for the narrower holding that abstention is inappropriate when a statute has a clear and expansive preemption clause. See Terminix International Company, L.P. v. Rocque, 210 F. Supp. 2d 97, 102 (D. Conn. 2002) (noting that the Second Circuit's pre-NOPSI cases involved ERISA, which "has an expansive preemption clause" where "the preemptive effect . . . is likely to be clear"). The Terminix court also suggests that In re Pan American Corp., 950 F.2d 839, 847 (2d Cir. 1991), a post-NOPSI case cited by Plaintiffs, is best understood as rejecting Younger abstention when an action is based on "preemption under the Warsaw Convention, which is . . . analogous to the broad, facially conclusive preemption of ERISA." Terminix, 210 F. Supp. 2d at 102 n.5.

power to issue the contested subpoenas. The NSMIA expressly preempts several types of state securities regulation, but preserves state power to "investigat[e] and bring[] enforcement actions with respect to fraud or deceit." NSMIA, § 303(a)(b)(2), codified at 15 U.S.C. § 80b-3a(b)(2). A state court, after further factual inquiry, might determine that the contested subpoenas conflict with federal law, or, as Plaintiffs state, that "Mr. Spitzer's case on advisory fees has, in truth, zero to do with 'fraud.'" (Opp. at 4.) But "what requires further factual inquiry can hardly be deemed 'flagrantly' unlawful for purposes of a threshold abstention determination." NOPSI, 491 U.S. at 367.

Because Plaintiffs' preemption claim is at best "substantial" and does not rise to the level of "facially conclusive," NOPSI dictates that Younger abstention principles are applicable to this action. The Court must therefore apply the Younger three-part test to Plaintiffs' efforts to enjoin the Attorney General's investigation and enforcement of the contested subpoenas, and determine whether any exception to Younger applies.

 B. The Younger Three-Part Test

  1. Ongoing State Proceeding

The Attorney General's issuance of the contested subpoenas as part of a Martin Act investigation constitutes an "ongoing state proceeding".

Although the Second Circuit has not considered the issue,

11

several other courts of appeals and lower courts have held that the issuance of compulsory process, including subpoenas, in criminal cases, initiates an "ongoing" proceeding for the purposes of Younger abstention. See, e.g., Texas Ass'n of Bus. v. Earle, 388 F.3d 515, 520 (5th Cir. 2004) (holding that grand jury subpoenas constitute an ongoing state proceeding); Kingston v. Utah County, 1998 WL 614462 (10th Cir. Sept. 8, 1998) (holding that the execution of a search warrant, before any formal charges were brought, constitutes an ongoing state proceeding); Kaylor v. Fields, 661 F.2d 1177, 1182 (8th Cir. 1981) (holding that subpoenas issued by prosecutor pursuant to state law constitute an ongoing state proceeding); Nick v. Abrams, 717 F. Supp. 1053, 1056 (S.D.N.Y. 1989) (holding that the execution of a search warrant prior to arrest or indictment constituted an ongoing state proceeding); Law Firm of Daniel P. Foster, P.C. v. Dearie, 613 F. Supp. 278, 280 (E.D.N.Y. 1985) ("Thus, were the court to [enjoin the grand jury subpoena], the immediate and direct effect would be to enjoin the state court from enforcing its order to comply with the subpoena and the state from pursuing a grand jury investigation, which is a criminal proceeding."); see also Juidice v. Vail, 430 U.S. 327, 334 (1977) (holding that a contempt proceeding to enforce a court-sanctioned subpoena constitutes an ongoing proceeding).

The reasoning supporting these decisions applies with similar

force to the contested subpoenas. Although the contested subpoenas are not part of a criminal proceeding, they were issued by the Attorney General pursuant to an investigation of Plaintiffs' allegedly illegal activities, and the information sought may be used to initiate civil or criminal proceedings against Plaintiffs. Cf. N.Y. Gen. Bus. Law § 352-c. Younger's principles extend to civil and administrative proceedings. Washington, 373 F.3d at 318. Moreover, the contested subpoenas serve a similar purpose to subpoenas in criminal matters. They are an "integral part" of a potential proceeding against Plaintiffs, and without such subpoenas, the Attorney General "seldom could amass the evidence necessary" to commence fraud actions. See Nick v. Abrams, 717 F. Supp. at 1056.

    Furthermore, a Southern District of New York court facing a similar factual scenario recently came to the same conclusion. In Hip-Hop Summit Action Network v. New York Temp. State Comm'n on Lobbying, a court held that Younger's "ongoing proceeding" requirement was "clearly satisfied" when a state agency charged with investigating and administratively prosecuting violations of New York's lobbying laws issued subpoenas, even though no formal charges had been filed. 2003 WL 22832569 at *3 (S.D.N.Y. Nov. 25, 2003). As in Hip-Hop Summit, the Attorney General is a state official charged with investigating illegal activities, who issued the contested subpoenas pursuant to that power. The issuance of

subpoenas by a state official under these circumstances constitutes an ongoing proceeding for the purposes of Younger.

### 2. Important State Interest

The Attorney General's investigation also involves an "important state interest": investigating and preventing fraudulent conduct and enforcing subpoenas issued pursuant to state law. See Huffman 420 U.S. at 604 (holding that an important state interest existed where the state civil proceeding was closely akin to a criminal prosecution); Juidice, 430 U.S. at 335-36 (holding that state has an important interest in the integrity of its subpoena and contempt process).

Plaintiffs argue that, because the Attorney General is investigating in an area preempted by federal law, there can be no valid state interest (see Seligman Opp. at 21). But as discussed in Section A, in NOPSI the Supreme Court made clear that preemption actions are still subject to Younger abstention. In determining the state interest in a proceeding, a court need only look to the "importance of the generic proceedings to the State." NOPSI, 491 U.S. at 315. Here, the generic proceedings — the enforcement of subpoenas issued pursuant to state law in furtherance of a fraud investigation – represent an important and legitimate state interest.

### 3. Opportunity for Judicial Review

Plaintiffs also have an adequate opportunity for judicial

review of their preemption claims in state court. Where the federal plaintiff has an "opportunity to raise" its constitutional claims in a "competent state tribunal," abstention is appropriate. Middlesex, 457 U.S. at 437. There is no question Plaintiffs had the opportunity to file a motion to quash the subpoenas in New York Supreme Court, which would allow for adequate judicial review. See N.Y. Civ. Prac. Law § 2304 (providing for motion to quash); Temple of the Lost Sheep, 761 F. Supp. at 243 (recognizing that the availability of a motion to quash in New York Supreme Court satisfies the opportunity for judicial review); Schachter, 445 F. Supp. at 1382-83 (finding the opportunity to be heard "expressly contemplated" by New York Civil Practice Law §§ 2304 & 2308(b)); see also McGinley v. Hynes, 51 N.Y.2d 116, 126 n.3 (N.Y. 1980) ("[T]he traditional remedy of a motion to quash provides adequate protection to those who feel themselves aggrieved by the conduct of a public prosecutor who pursues an investigation in excess of his legitimate authority.").

Where, as here, it is "abundantly clear" that Seligman had an opportunity to present its federal claims to a competent state tribunal, "[n]o more is required to invoke Younger abstention." Juidice, 430 U.S. at 337; Spargo, 351 F.3d at 81 ("In sum, while Spargo may prefer a federal forum, he may pursue his constitutional claims in state proceedings, and therefore, the District Court should have abstained."). Thus, the Attorney General's action also

meets the "judicial review" prong of the three-part test.

### C. Younger Exceptions

Even when the requirements of Younger are met, a federal court may intervene in a state proceeding upon a showing of "bad faith, harassment or any other unusual circumstance that would call for equitable relief." Younger, 401 U.S. at 54. The Second Circuit has divided these exceptions to Younger abstention into two categories: "bad faith/harassment" and "extraordinary circumstances". See Diamond "D" Constr., 282 F.3d at 198-201. The plaintiff has the burden of demonstrating that one of these exceptions applies. Kirschner v. Klemons, 225 F.3d 227, 235-36 (2d Cir. 2000). Although Plaintiffs raise both exceptions, neither is applicable.

#### 1. Bad Faith/Harassment

The bad faith exception is reserved for "proceeding[s] . . . initiated with and . . . animated by a retaliatory, harassing, or other illegitimate motive." Diamond "D" Constr., 282 F.3d at 199. Furthermore, "the party bringing the state action [generally] must have no reasonable expectation of obtaining a favorable outcome." Cullen v. Fliegner, 18 F.3d 96, 103 (2d Cir. 1994); see also Perez v. Ledesma, 401 U.S. 82, 85 (1971) (finding bad faith existed where plaintiff demonstrated "proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction"). "A state proceeding that is

legitimate in its purposes, but unconstitutional in its execution—even where the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception." Diamond "D" Constr., 282 F.3d at 199.

Plaintiffs argue that the Attorney General issued the contested subpoenas in bad faith and with intent to harass Seligman because Seligman refused to accede to certain settlement demands, including changes to Seligman's procedure for arriving at advisory fees. (See Compl. ¶12-14; Opp. at 22-23.) Assuming for the purposes of this motion to dismiss that the allegations are true, they still fall short of demonstrating bad faith.

The complaint does not allege any conduct worse than the Attorney General's purported use of a "pressure tactic": threatening expanded civil prosecution if Seligman refused the terms of the settlement. This alleged behavior does not constitute harassment. Furthermore, Plaintiffs do not allege that the Attorney General issued the subpoenas with no hope of prevailing on the merits of the fraud case. Plaintiffs' failure to allege or demonstrate malevolent intent on the part of the state precludes a finding of bad faith.

    2.   Extraordinary Circumstances

The "extraordinary circumstances" exception requires "(1) that there be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; and (2)

17

that a finding be made that the litigant will suffer 'great and immediate' harm if the federal court does not intervene." Diamond "D" Constr., 282 F.3d at 201 (citing Trainor v. Hernandez, 431 U.S. 434, 441-42 & n. 7 (1997)); see also Kugler v. Helfant, 421 U.S. 117, 124 (1975) (holding the state proceeding must create a "sufficient threat of such great, immediate, and irreparable injury as to warrant intervention").

Neither prong is satisfied here.  Seligman does not allege or even discuss the first prong.  As to the second, Seligman states that "[t]he potential imposition of state requirements and Draconian penalties could negatively impact Plaintiffs' operations and financial stability."  (Opp. at 23.)  A "potential" penalty that "could" impact Seligman's operations and bottom line does not rise to the level of a great, immediate, and irreparable harm. Indeed, even were the injury more concrete, "the cost, anxiety, and inconvenience of having to defend against a single . . . prosecution [is] not the type of injury that could justify federal interference."  Huffman, 420 U.S. at 601-02.  No extraordinary circumstances exist that warrant the Court's interference in the state proceeding.

In sum, the Attorney General's investigation meets the Younger three-part test and no exceptions apply.  Plaintiffs' action to enjoin the Attorney General's subpoena enforcement and investigation therefore "disrupt[s] the integrity" of an ongoing

state action, and this court must dismiss Plaintiffs' action pursuant to Younger.

III.    Conclusion

In light of the foregoing, the Attorney General's motion to dismiss (D.E. 9) is GRANTED. The Clerk of the Court is directed to close this case. Any pending motions are moot.


SO ORDERED.

DATED:   New York, New York
         September 26, 2007

*[signature]*

KIMBA M. WOOD
United States District Judge